```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER SCHMIDT, D.O.         :      CIVIL ACTION
                                  :
         v.                       :
                                  :
J. CRAIG CURRIE, ESQ., et al.     :      NO. 04-4233
```

MEMORANDUM

Bartle, J.                                        December 9, 2005

   This is a diversity action brought under the so-called Dragonetti Act for "wrongful use of civil proceedings." See 42 Pa. Cons. Stat. Ann. §§ 8351-54.  Plaintiff is Christopher Schmidt, D.O. and defendants are J. Craig Currie, Esquire, Irene M. McLafferty, Esquire, J. Craig Currie & Associates, Currie & McLafferty, Stanley Dietz, and Dolores Dietz.  Before the court is the motion of defendants J. Craig Currie, Esquire, Irene M. McLafferty, Esquire, J. Craig Currie & Associates, and Currie & McLafferty ("defendants") for summary judgment.

   Stanley and Dolores Dietz had previously sued Dr. Schmidt for medical malpractice in the Court of Common Pleas of Philadelphia County.  The attorney defendants in this federal action were counsel for the Dietzes.  Stanley and Dolores Dietz v. Christopher Schmidt, D.O., et al., Civ.A. No. 000503387 (C.P. Phila.).  Dr. Schmidt prevailed before a jury and judgment was entered in his favor.  It is this state court lawsuit which Dr. Schmidt contends constitutes the wrongful use of civil proceedings.

I.

Under Rule 56(c) of the Federal Rules of Civil Procedure, we may grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Id. at 254.  We review all evidence and make all reasonable inferences from the evidence in the light most favorable to the non-movant.  See In re Flat Glass Antitrust Litigation, 385 F.3d 350, 357 (3d Cir. 2004).  The non-moving party may not rest upon mere allegations or denials of the moving party's pleadings but must set forth specific facts showing there is a genuine issue for trial.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

Pennsylvania has codified the common law cause of action for wrongful use of civil proceedings.  The tort is interpreted and applied broadly against those who use legal process as a "tactical weapon to coerce a desired result that is not the legitimate object of the process." Gen. Refractories v. Fireman's Fund Ins., 337 F.3d 297 (3d Cir. 2003) (quoting McGee v. Feege, 535 A.2d 1020, 1026 (Pa. 1987)).  The Dragonetti Act

allows the imposition of liability on an individual for wrongful use of civil proceedings if:

> (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and
> (2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa. Cons. Stat. Ann. § 8351(a).  Thus, the plaintiff in a Dragonetti action must show that he or she prevailed in the underlying action, that the Dragonetti defendants acted in a grossly negligent manner or without probable cause in pursuing the underlying action, and that they had an improper purpose in doing so.  An individual has "probable cause" to prosecute an action if he or she "believes in the existence of the facts upon which the claim is based" and also:

> (1) Reasonably believes that under those facts the claim may be valid under the existing or developing law; ... or (3) Believes as an attorney of record, in good faith that his procurement, initiation or continuation of a civil cause is not intended to merely harass or maliciously injure the opposite party.

42 Pa. Cons. Stat. Ann. § 8352.[1]  The reasonableness of an attorney is assessed objectively.  Bannar v. Miller, 701 A.2d 232, 238 (Pa. Super. 1997).  In the context of a Dragonetti action, Pennsylvania courts have defined gross negligence to mean the "want of scant care" or "lack of slight diligence or care, or

---

1.  The statute lists a second factor, omitted here, that applies only to non-attorneys.

a conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party, who may typically recover exemplary damages."  Hart v. O'Malley, 781 A.2d 1211, 1218 (Pa. Super. 2001) (citations omitted).  Even if a Dragonetti plaintiff can show that the defendant either lacked probable cause in or acted with gross negligence by initiating or maintaining the underlying action, the defendant is not liable unless, as noted above, the plaintiff can demonstrate the underlying action was filed for an improper purpose.  Broadwater v. Sentner, 725 A.2d 779, 784 (Pa. Super. 1999).

"An attorney who initiates a civil proceeding on behalf of his client, even if he has no probable cause and is convinced that his client's claim is unfounded, is still not liable if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim."  Id. (citing Gentzler v. Atlee, 660 A.2d 1378, 1382 n.6 (Pa. Super. 1995)).  Where the underlying action was filed or maintained without justification, an improper purpose may be inferred.  Id.  In a Dragonetti action against an attorney, Pennsylvania courts have explained that

> [a]n attorney is not required or expected to prejudge his client's claim, and although he is fully aware that its chances of success are comparatively slight, it is his responsibility to present it to the court for adjudication if his client so insists after he has explained to the client the nature of the chances.

Id.  Nonetheless, an attorney who knowingly prosecutes a groundless action to accomplish a malicious purpose is liable

under the Dragonetti Act.  <u>U.S. Express Lines Ltd. v. Higgins</u>, 281 F.3d 383 (3d Cir. 2002).

## II.

In 1998, Mr. Dietz sought treatment from Dr. Schmidt to correct his Peyronie's disease that caused the former's penis to be "bent."  Dr. Schmidt performed surgery on Mr. Dietz's penis on December 11, 1998.  Mr. Dietz claimed that Dr. Schmidt committed malpractice in the performance of the surgery and in his post-operative care of Mr. Dietz over the following several months.

Dr. Schmidt, relying on the charts recorded by him and his staff, contends that at the first post-operation visit on December 14, 1998, the surgical incision was "clean and dry" and Mr. Dietz's catheter was removed without difficulty.  Mr. Dietz, on the other hand, claimed that at the same visit, his penis looked black and blue.  Dr. Schmidt further asserts that there was no evidence to support Mr. Dietz's allegation that he experienced impotency immediately after his initial surgery.  Dr. Schmidt argues that the defendant attorneys were unreasonable to credit the statements of Mr. Dietz in light of his office charts.

According to Dr. Schmidt's charts, nothing appeared wrong with Mr. Dietz's penis during post-operation office visits on December 15 or when a suture was removed on December 21, 1998.  Mr. Dietz, to the contrary, stated that his penis was in considerable pain and was discolored at the time of these visits to Dr. Schmidt.  Indeed, according to Dr. Schmidt, the Dietzes' attorneys had no reasonable basis for their belief that any of

Dr. Schmidt's medical charts and notes regarding Mr. Dietz's follow-up office visits on December 14, 15, and 21, 1998 misrepresented the condition of Mr. Dietz's penis.

Mr. Dietz further stated that he saw Dr. Schmidt on December 31, 1998 after Mrs. Dietz telephoned Dr. Schmidt's office on December 30 to report her husband was having painful erections at night and bleeding from his penis. Based on Dr. Schmidt's office charts, Mrs. Dietz spoke that day with a nurse who advised her to bring her husband to Dr. Schmidt the next day. According to those charts, however, Mr. Dietz did not return to Dr. Schmidt's office until his scheduled visit on January 11, 1999. Dr. Schmidt contends it was unreasonable for the defendant attorneys to credit the Dietzes' statements when the office charts contained no mention that such a visit had occurred.

Dr. Schmidt's charts record the next time he examined Mr. Dietz was January 11, 1999. At that visit, Dr. Schmidt noted that he observed a "necrotic area over dorsal surface" of Mr. Dietz's penis and recommended debridement surgery for the next day. Mr. Dietz stated that when Dr. Schmidt saw the condition of his penis he took a step back in horror and instructed his nurse not to tell Dr. Larry Solish (Dr. Schmidt's medical practice partner) about Mr. Dietz's penis. Dr. Schmidt asserts that the Dietzes' attorneys should not have believed their client's statement in this regard. Dr. Schmidt further contends that there was no evidence that he ever noted Mr. Dietz experienced

numbness of his penis during a later post-operation examination on March 1, 1999.

Dr. Schmidt also maintains that the Dietzes' attorneys should not have relied on the expert opinion of Dr. George Suarez, based in part on statements of Mr. Dietz, that Dr. Schmidt committed malpractice in performing the surgery.  First, Dr. Schmidt argues that instead Dr. Suarez ought to have taken into account documentation that showed Mr. Dietz had a history of hypertension, blood circulation problems, angina, and shortness of breath.  In addition, Dr. Schmidt claims there was no evidence to support Dr. Suarez's claim that during surgery Dr. Schmidt failed to remove a tourniquet applied to Mr. Dietz's penis or that Mr. Dietz experienced numbness immediately after his surgery or a loss of sensation prior to his subsequent penile implant surgery which occurred on September 14, 1999.  Similarly, Dr. Schmidt contends that Dr. Suarez had no reason to rely on statements by Dr. Daniel B. Rukstalis, the surgeon who had performed Mr. Dietz's subsequent penile implant surgery, that Mr. Dietz had loss of sensation in his penis before his implant surgery and that Mr. Dietz's penis had suffered damage to its nerves and a reduction in the blood supply.

In essence, Dr. Schmidt argues that the documentary information in the possession of the Dietzes' counsel in the underlying medical malpractice action totally vitiates any basis for that action against him and that the defendant attorneys

should have disbelieved the contrary oral statements of their clients in light of the contemporaneous medical record.

### III.

We emphasize that the issue before us is not whether Dr. Schmidt committed medical malpractice on Mr. Dietz.  Rather, the focus here is whether the Dietzes' attorneys violated the Dragonetti Act by pursuing the medical malpractice action against him.  In this regard, Dr. Schmidt has not produced an expert witness to testify before the jury concerning the gross negligence of the Dietzes' attorneys or their lack of probable cause for bringing and litigating the underlying action.  Thus, we must decide whether the attorney defendants are entitled to summary judgment against Dr. Schmidt because of this deficiency.

A Dragonetti action against an attorney is analogous to a legal malpractice action.  Dr. Schmidt alleges that the Dietzes' attorneys in the underlying action breached a certain standard of care required of attorneys under the Dragonetti Act.  At issue is whether the attorneys were grossly negligent or lacked probable cause in the "procurement, initiation or continuation" of the Dietzes' malpractice claim and whether the action was designed to harass Dr. Schmidt.  42 Pa. Cons. Stat. Ann. § 8352.

Our Court of Appeals has held that in a legal malpractice action the plaintiff bears the burden to establish the appropriate standard of care with expert evidence to avoid an involuntary dismissal or a directed verdict.  See Lentino v.

Fringe Employee Plans, Inc., 611 F.2d 474 (3d Cir. 1979).  The standard of care in a professional malpractice action is a question of fact.  Id. at 481.  Under Lentino, the only time an expert is not required in an action for legal malpractice is where "the lack of skill is so obvious as to be within the range of the ordinary experience and comprehension of non-professional persons."  Id. at 480.  Likewise, the Pennsylvania Superior Court has more recently reiterated that expert testimony to establish a the standard of care in a legal malpractice action is required unless the "issue is simple and the lack of skill obvious."  Bannar v. Millar, 701 A.2d 242 (Pa. Super. 1997) (quoting Rizzo v. Hains, 555 A.2d 58, 66 (Pa. 1989)).

   Though Lentino involved a directed verdict, the Court of Appeals has applied the requirement of expert evidence to a motion for summary judgment.  See Gans v. Mundy, 762 F.2d 338 (3d Cir. 1985).  When the defendant moves for summary judgment and avers facts and alleges he is not negligent, the burden "devolved upon [the plaintiff] to oppose [the defendant's] factual averments with expert evidence demonstrating the [defendant's] conduct failed to meet the appropriate standard of care."  Id. at 343.  A plaintiff who fails to produce such expert evidence cannot meet his or her burden of proof.  Id.  We see no reason why a similar rule should not apply in the Dragonetti action against the attorneys unless the narrow exception recognized in Lentino applies.

The attorney defendants here have produced an expert report which lays out their assertions regarding the standard of care as well as an opinion that the defendants met such a standard. Dr. Schmidt, as noted above, has not produced any expert to establish that the attorney defendants failed to meet the standard of care required under the Dragonetti Act. Therefore, unless the matter falls within the narrow exception, Dr. Schmidt has failed to create a dispute of material fact regarding the standard of care to withstand summary judgment.

The gravamen of Dr. Schmidt's Dragonetti claim is that the defendants were grossly negligent or lacked probable cause to file and maintain the Dietz action in believing the statements of Stanley and Dolores Dietz in light of Dr. Schmidt's office charts and notes. According to Dr. Schmidt, the attorney defendants knowingly pursued an invalid claim and not only should have disbelieved their clients but also acted unreasonably in relying on an expert opinion based on the Dietzes' statements. Dr. Schmidt contends that in prosecuting the Dietz action, his opponents' attorneys did not meet the standard of care expected of attorneys in investigating the veracity of the statements made to them by their clients. The finder of fact must therefore determine if the Dietzes' attorneys fell below the standard of care required of medical malpractice lawyers in investigating a client's case and pursuing the matter through trial.

As stated above, the standard of care is a question of fact that is decided by the jury. Gans, at 341 (quoting Lentino,

-10-


at 481). The ordinary experience of a non-professional jury does not equip it either to understand or determine the reasonableness of attorneys' evaluation of their clients claims without expert assistance. For example, to decide whether the attorney defendants had probable cause to pursue the malpractice action, the jury would first have to determine whether said defendants "believe[d] in the existence of the facts upon which the claim is based" and, in addition, "[r]easonably believe[d] that under those facts the claim may be valid under the existing or developing law." 42 Pa. Cons. Stat. Ann. § 8352. There is no way that a jury can make a finding in favor of Dr. Schmidt concerning what an attorney reasonably believes unless it has expert testimony about the application of not only existing, but also developing law to the facts. Dr. Schmidt does not explain, for example, how a jury is going to deliberate about "developing law" without the help of a legal expert. In addition, in order to find that an attorney was grossly negligent, the jury must be told about the standards which an attorney is required to meet. Only an expert witness can do this since the standard of care is a question of fact. Gans, at 341. The jury must also consider whether the attorney acted for an improper purpose. 42 Pa. Cons. Stat. Ann. § 8351(a). Again, it is impossible for a jury to decide in favor of the plaintiff unless it learns from an expert the duties and obligations a lawyer has to his or her clients.

Under Broadwater, an attorney is not liable under the Dragonetti Act even if the client's chances of success are

"comparatively slight" provided the client wishes to proceed after the attorney has fully "explained ... the nature of the chances." Broadwater, 725 A.2d at 784. No jury could possibly assess whether the chances of success of the underlying action rose to the level of "comparatively slight" without expert testimony.

Dr. Schmidt cites Bannar in support of his position that the subject matter of this case is not complicated and, therefore, he does not need an expert.[2] Bannar relieves a party of the need for expert testimony only in cases where "the issue is simple and the lack of skill obvious." Bannar, 701 A.2d at 249. However, this is not a simple matter easily understood by a jury without the aid of expert testimony. A jury using its "ordinary experience and comprehension" cannot be expected to understand without expert help whether the attorney defendants' "lack of skill" was "obvious" in failing to meet their professional obligations and duties in bringing and prosecuting the underlying medical malpractice action. The fact that Dr. Schmidt was successful in defending the underlying action is, of course, not sufficient.

Dr. Schmidt attempts to extricate himself from the fate of summary judgment by claiming his action meets the standards for a prima facie case under the Dragonetti Act enunciated in Gentzler v. Atlee, 660 A.2d 1378 (Pa. Super. 1995). He quotes

---

2. Dr. Schmidt refers to the second Bannar opinion. 701 A.2d 242.

that court's refusal to shield attorneys who "intentionally cast their lawsuit net too wide ... against defendants who do not belong in the case."  Id. at 1386.  Gentzler offers no help to Dr. Schmidt regarding the necessity of expert evidence.  There a cardiologist brought a Dragonetti action against the attorneys of a former patient who had unsuccessfully sued him for medical malpractice.  The patient had contracted the Human Immunodeficiency Virus ("HIV") from tainted blood during heart surgery.  The cardiologist, however, merely referred the patient to the hospital for the tests that diagnosed the heart problem that required the surgery during which the patient was infected with HIV.  The cardiologist had no involvement in either the tests at the hospital, the blood screening, or the underlying surgery.  In contrast to Gentzler, Dr. Schmidt examined and performed surgery on Mr. Dietz and was engaged in his post-operative care.  This is not a situation where attorney defendants sued an obviously improper party in the underlying action who had no involvement with any allegedly substandard medical care.

    The defendants have submitted the testimony of an expert who has carefully and thoroughly explained the standard of care and his view that the defendants met that standard.  Having done this, the burden "devolved upon [the plaintiff] to oppose [the defendant's] factual averments with expert evidence demonstrating the [defendant's] conduct failed to meet the appropriate standard of care."  Gans, at 343.  Dr. Schmidt has

-13-

not responded with an expert.  Because this case is a complex matter, expert testimony is required to establish the standard of care.  As a matter of law, Dr. Schmidt cannot prevail in his case against the attorney defendants.

     We will grant summary judgment in favor of the defendants, J. Craig Currie, Esquire, Irene M. McLafferty, Esquire, J. Craig Currie & Associates, and Currie & McLafferty.

```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHRISTOPHER SCHMIDT, D.O.      :     CIVIL ACTION
                               :
          v.                   :
                               :
J. CRAIG CURRIE, ESQ., et al.  :     NO. 04-4233
```

ORDER

AND NOW, this 9th day of December, 2005, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of defendants J. Craig Currie, Esquire, Irene M. McLafferty, Esquire, J. Craig Currie & Associates, and Currie & McLafferty for summary judgment is GRANTED; and

(2) judgment is entered in favor of defendants J. Craig Currie, Esquire, Irene M. McLafferty, Esquire, J. Craig Currie & Associates, and Currie & McLafferty and against plaintiff Christopher Schmidt, D.O.

                              BY THE COURT:


                              /s/ Harvey Bartle III
                                                         J.